## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 15-CV-0342-CVE-TLW |
| WAYNE PETTIGREW, individually and d/b/a GROUP & PENSION PLANNERS, INC.; FIRST TRINITY FINANCIAL CORPORATION, an Oklahoma corporation; GREGG ZAHN, an individual, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## OPINION AND ORDER

Now before the Court is the Motion of First Trinity Financial Corporation and Gregg Zahn for Summary Judgment Against State Farm Fire & Casualty Company (Dkt. # 30) and Pettigrew's joinder therein (Dkt. # 34), the Motion for Summary Judgment and Supporting Brief of Plaintiff State Farm Fire and Casualty Company (Dkt. # 35), and Wayne Pettigrew's motion for summary judgment (Dkt. # 52). Defendants First Trinity Financial Corporation (FTFC) and Gregg Zahn move for summary judgment on the ground that a personal liability umbrella policy issued by State Farm Fire and Casualty Company (State Farm) to Wayne Pettigrew requires State Farm to defend and indemnify Pettigrew in a state court action that FTFC and Zahn filed against Pettigrew after Pettigrew made allegedly defamatory statements about Zahn's leadership of FTFC. Dkt. # 30. Pettigrew joined FTFC and Zahn's motion (Dkt. # 34) and filed his own motion for summary judgment (Dkt. # 52), arguing that State Farm is required to defend and indemnify Pettigrew in the

suit against him by FTFC and Zahn because the state court action is a covered loss under the umbrella policy and no policy exclusions apply.[1]  State Farm filed  a cross motion for summary judgment, arguing that the umbrella policy does not provide coverage to Pettigrew, specifically asserting that policy exclusions for business pursuits, professional services, and acts as a board member preclude coverage.  Dkt. # 35.  The parties each ask the Court to find that they are entitled to judgment as a matter of law and deny the opposing party's motion.

## I.

This insurance coverage dispute arises from a homeowner's insurance policy and a personal liability umbrella policy that State Farm issued to Pettigrew, under which Pettigrew seeks coverage for a state court action against FTFC and Zahn.  FTFC is a holding company for an Oklahoma insurance company.  Dkt. # 30-1, at 7.  Zahn founded the company in 2004 and recruited Pettigrew, who has over 30 years of experience as an insurance professional, both as an insurance broker and insurance consultant, to serve as a founding board member.  Dkt. # 35-2; Dkt. # 35-3, at 3; Dkt. # 43-2, at 5-6.  Zahn serves  FTFC's president, chief executive officer (CEO), and chairman of the board of directors.  Dkt. # 2-6;  Dkt # 35, at 11; Dkt. # 43, at 4.  Pettigrew served as member of FTFC's board of directors from its inception in 2004 to 2013.  Dkt. # 35, at 9; Dkt. # 43, at 3.  As an initial investment, Pettigrew purchased  40,000 shares in Southwest Security Financial

---

[1]     State Farm notes in its reply to Pettigrew's motion for summary judgment that Pettigrew filed his motion for summary judgment after the deadline for dispositive motions elapsed.  Dkt. # 53, at 1 n.1.  Pursuant to this Court's scheduling order, the deadline for dispositive motions was January 28, 2016.  Dkt. # 16.  Pettigrew filed his motion for summary judgment on February 8, 2016.  Dkt. # 52.  Although Pettigrew's motion was untimely, the Court declines to strike it because Pettigrew timely filed his joinder in FTFC and Zahn's motion and Pettigrew does not advance any arguments that materially differ from those presented by FTFC and Zahn.

Corporation, later renamed FTFC.  Dkt. # 35, at 9-10; Dkt. # 43, at 4.  Pettigrew later purchased an additional 2,000 shares and received 8,000 shares as dividends in 2009 and 2010.  Dkt. # 35, at 10; Dkt. # 43, at 4.  Pettigrew currently owns 50,000 shares.  Dkt. # 35, at 10; Dkt. # 43, at 4.  Pettigrew admits that he had a profit motive in becoming an FTFC shareholder.  Dkt. # 35-3, at 4.  Pettigrew also received annual compensation for his service on the board, totaling $26,500 over the near decade Pettigrew served on the board.  Dkt. # 35, at 11; Dkt. # 43, at 4.

In 2009, Zahn was appointed CEO of FTFC.  Dkt. # 35, at 11; Dkt. # 43, at 4.  After Zahn assumed this role, Pettigrew became increasingly concerned with Zahn's leadership.  Dkt. # 2-3.  Pettigrew's stated reasons for concern were Zahn's sale of stock to family members at a price of ten cents per share, the company's shift from marketing insurance to acquiring assets, Zahn's participation on both the compensation and nominating committees, the lack of separation between company president and the chairman of the board, and issues related to Zahn's prior business dealings in Montana.  Id.

At a March 14, 2013 FTFC board meeting, the board entertained nominations for the board of directors.  Dkt. # 35, at 12; Dkt. # 43, at 5.  Pettigrew did not receive a nomination to continue serving on the board after the expiration of his term on May 15, 2013.  Dkt. # 35, at 12; Dkt. # 43, at 5.  Before the conclusion of his term, Pettigrew made an open records request to the Oklahoma Insurance Department, seeking information related to his concerns about Zahn's leadership.  Dkt. # 35, at 12; Dkt. # 43 at 5.  Through the open records request, Pettigrew received information that, prior to founding FTFC, Zahn entered into a deferred prosecution agreement in Montana relating

to Zahn's actions as an officer in another corporation, AmWest Financial Network, Inc.[2]  Dkt. # 35, at 12; Dkt. # 43, at 5.  The deferred prosecution agreement related to charges of securities fraud. Dkt. # 35, at 12; Dkt. # 43, at 5.

On April 8, 2013, Pettigrew sent a letter to Zahn notifying Zahn of Pettigrew's resignation, effective May 1, 2013.[3]  Dkt. # 2-3.  The letter included Pettigrew's stated reasons for his resignation, which included lack of board oversight, failure to follow proper procedures, and Pettigrew's recent discovery of "previous charges and prosecutions against [Zahn] by other state regulators[.]"  Id.  On the same day, Pettigrew sent a letter to a fellow board member, Tinker Owens, advising Owens of his resignation and detailing the reasons for his departure.  Dkt. # 35-11. Pettigrew also sent a letter to Irving Faught, Commissioner of the Oklahoma Department of

---

[2]     The parties dispute whether Pettigrew had prior knowledge of the deferred prosecution agreement.  Although the parties dispute this fact, it does not create a genuine dispute of material fact that would render summary judgment inappropriate.  See Farthing v. City of Shawnee, Kan., 39 F. 3d 1131, 1134-35 (10th Cir. 1994) ("A 'material' fact is one 'that might affect the outcome of the suit under the governing law,' and a 'genuine' issue is one where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986))).  The parties do not dispute that Pettigrew received this information through his open records request. And whether Pettigrew had prior knowledge of the deferred prosecution agreement is irrelevant to the question before the Court regarding policy coverage.

[3]     The parties dispute the date that Pettigrew's resignation became effective.  State Farm asserts that Pettigrew's letter of resignation stated that he intended to resign effective May 1, 2013. Dkt. # 35, at 13.  FTFC, Zahn, and Pettigrew assert that Pettigrew knew that his resignation was effective the date it was tendered, April 8, 2013, regardless of the date contained in Pettigrew's letter.  Dkt. # 30, at 3; Dkt. # 52, at 20-21.  The defendants fail to acknowledge that, in the state court petition, Zahn and FTFC stated that Pettigrew served as a board member until May 1, 2013.  Dkt. # 2-6, at 2.  And, in any event, the date Pettigrew's resignation became effective is not a genuine dispute of material fact.  For the reasons discussed below, Pettigrew's resignation date does not have an effect on whether the policy exclusions preclude coverage for the underlying state court action.  As such, this factual dispute does not preclude summary judgment.

Securities, advising Faught of Pettigrew's resignation and calling for an investigation of Zahn and FTFC.  Dkt. # 2-5.

On April 9, 2013, Pettigrew sent a letter to John Doak, Commissioner of the Oklahoma Insurance Department, advising Doak of Pettigrew's resignation and explaining the concerns that lead to Pettigrew's resignation.  Dkt. # 2-4.  Pettigrew signed the letter as "Wayne Pettigrew, Board Member."  Id.  Pettigrew also issued two press releases: one announcing his resignation, effective May 1, 2013 and one announcing the resignation of another FTFC board member, Shannon Young. Dkt. # 35-14; Dkt. # 35-15.  The second press release stated that Pettigrew and Young were requesting an investigation by the Oklahoma Department of Securities and detailed Zahn's past "issues with securities department violations." Dkt. # 35-16.  Pettigrew explained that he took these actions because he had a fiduciary duty to protect the interests of FTFC stockholders.  Dkt. # 35-3, at 4.

On July 19, 2013, in response to Pettigrew's letters and public statements, FTFC and Zahn filed suit against Pettigrew in Tulsa County District Court alleging breach of fiduciary duty, defamation, intentional interference with business relationships, intentional interference with prospective business relationships, fraud and deceit, outrage, and seeking punitive damages.  Dkt. # 2-6.  At the time, State Farm had issued two insurance policies to Pettigrew: a homeowners insurance policy and a personal liability umbrella policy.  Dkt. # 2-1; Dkt. # 2-2.  Pettigrew made demand on State Farm to defend and indemnify him in the state court action.  Dkt. # 2-7.  State Farm agreed to defend Pettigrew, subject to a reservation of rights.  Id.  State Farm then filed this action, seeking declaratory judgment that neither policy it issued to Pettigrew provides coverage for the loss at issue and that it has no duty to defend or indemnify Pettigrew in the state court action.  Dkt. # 2.

5

The parties have filed competing motions for summary judgment, each arguing that judgment as a matter of law is appropriate. Defendants assert that, as a matter of law, the umbrella policy covers the state court action and that no policy exclusions are applicable. Dkt. # 30, at 5; Dkt. # 52, at 21-22. State Farm asserts that it has no duty to defend or indemnify Pettigrew in the state court action because the umbrella policy exclusions preclude coverage as a matter of law. Dkt. # 35, at 33-36.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting FED. R. CIV. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." Id. at 251-52.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

"The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997) (applying Oklahoma insurance law).  In Oklahoma, interpretation of an insurance contract is a matter of law. Max True Plastering CO. v. U.S. Fid. and Guar. Co., 912 P.2d 861,  869 (Okla. 1996).  The insured has the burden of showing that his or her claim is covered under the policy. See U.S. Fid. and Guar. Co. v. Briscoe, 239 P.2d 754, 756 (Okla. 1952) (noting that "the contractor must bring himself within the terms of the policy, before he can establish insurer's liability thereon"); see also Pitman v. Blue Cross and Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000) (explaining that, under Oklahoma law, "the insured has the burden of showing that a covered loss occurred").  Once the insured establishes coverage, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." Pitman, 217 F.3d at 1298. Therefore, summary judgment in favor of the insurer is proper when the undisputed facts show that the insured has failed to establish a covered claim under its insurance policy. See, e.g., VBF, Inc. v. Chubb Grp. of Ins. Cos., 263 F.3d 1226 (10th Cir. 2001) (affirming the district court's grant of summary judgment to the insurers where the undisputed facts established that, under Oklahoma law,

the insured's claims were not covered). Conversely, summary judgment in favor of the insured is proper when the undisputed facts show the insured has established a covered claim. See id.

### III.

The parties do not dispute that the homeowner's policy does not provide coverage for the underlying state court action, instead acknowledging that the homeowner's policy is relevant only insofar as it is a valid underlying policy required for the umbrella policy to be in effect. Dkt. # 30, at 9; Dkt. # 35, at 21; Dkt. # 52, at 11. Thus, the only question for the Court is whether the personal liability umbrella policy provides coverage, requiring State Farm to defend and indemnify Pettigrew in the underlying state court action. State Farm argues that the personal liability umbrella policy does not provide coverage to Pettigrew because three independent policy exclusions--the business pursuits exclusion, the professional services exclusion, and the acts a board member exclusion-- preclude coverage. Dkt. # 35, at 33-35. FTFC, Zahn, and Pettigrew assert that the policy exclusions do not apply because Pettigrew did not undertake his actions to further his business interests, he was not providing any professional services at the relevant time, and he did not engage in the activity while an active board member of FTFC. Dkt. # 30, at 5-7; Dkt. # 52, at 21-22.

In interpreting this policy, the Court applies the Oklahoma rules of construction. See VBF, Inc., 263 F.3d at 1230. Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc. 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties."

Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2003).  Ambiguities in an insurance

contract are construed against the insurer.  Max True, 912 P.2d at 865.  A court should not create

an ambiguity in the policy by "using a forced or strained construction by taking a provision out of

context, or by narrowly focusing on a provision."  Wynn v. Avemco Ins. Co., 963 P.2d 572, 575

(Okla. 1998).  A policy term will be considered ambiguous only if it can be interpreted as having

two different meanings.  Equity Ins. Co. v. City of Jenks, 184 P.3d 541, 544 (Okla. 2008);  Osprey

L.L.C. v. Kelly-Moore Paint Co., 984 P.2d 194, 199 (Okla. 1999).  However, the Oklahoma courts

"will not impose coverage where the policy language clearly does not intend that a particular

individual or risk should be covered," and neither a "split in authority over whether a certain term

is ambiguous," nor "the fact that the parties disagree" alone is sufficient to establish an ambiguity.

BP Amer., Inc. v. State Auto Prop. & Cas. Ins. Co., 148 P.3d 832, 835-36 (Okla. 2005).

The relevant coverage provision of the umbrella policy provides as follows:

**COVERAGE L - PERSONAL LIABILITY**
If a claim is made or a suit is brought against an insured for damages because of a
loss for which the **insured** is legally liable and to which this policy applies, **we** will
pay on behalf of the insured, the damages that exceed the **retained limit**.  The most
**we** will pay for such loss is the Coverage L Limit of Liability, as shown on the
declarations page, regardless of the number of **insureds** who may be liable, claims
made, or persons injured.

Dkt. # 2-2, at 10.  The policy defines a "loss" as:

a. an accident, including accidental exposure to conditions, which first results in
**bodily injury** or **property damage** during the policy period.  Repeated or
continuous exposure to the same general conditions is considered to be one loss; or

b. the commission of an offense which first results in **personal injury** during the
policy period.  A series of similar or related offenses is considered to be one **loss**.

Id. at 6.  "Bodily injury" means "physical injury, sickness, or disease to a person," and "property

damage" means "physical damage to or destruction of tangible property, including loss of use of

9

such property." Id. at 5, 7.  "Personal injury" is defined as an "injury other than **bodily injury** arising out of" in relevant part, "libel, slander, defamation of character . . . ." Id. at 6.

The relevant loss in the underlying state court action involves personal injury; FTFC and Zahn assert a claim of defamation against Pettigrew.  Dkt. # 2-6, at 6.  Because the underlying state court action makes no claim against Pettigrew for either bodily injury or property damage, the Court considers only whether the umbrella policy provides Pettigrew coverage for FTFC and Zahn's defamation claim.  The parties do not dispute whether defamation is a loss under the policy; instead they dispute whether one of the policy exclusions applies.  Dkt. # 30, at 10; Dkt. # 35, at 33; Dkt. # 52, at 15.  State Farm argues that three separate policy exclusions preclude coverage: the business pursuits exclusion, the professional services exclusion, and the acts as a board member exclusion. Dkt. # 35, at 33.  FTFC, Zahn, and Pettigrew assert that the policy exclusions do not apply.  Dkt. # 30, at 5-7; Dkt. # 52, at 21-23.

### A.

State Farm first asserts that the business pursuits exclusion precludes coverage for the underlying state court action and relieves State Farm of the obligation to either defend or indemnify Pettigrew because Pettigrew's service as an FTFC board member is a business pursuit and the state court action arose from this pursuit.  Dkt. # 35, at 24-29.  The defendants argue that the business pursuits exclusion does not apply because Pettigrew undertook his actions as an individual and for his own purposes, not for purposes that would be beneficial to his business involvement with FTFC.  Dkt. # 30, at 12-13; Dkt. # 52, at 15-18.

The business pursuits exclusion dictates that the policy does not provide coverage for any "**loss** arising out of any **insured's business property** or **business** pursuits of any **insured**[.]"[4] Dkt. # 2-2, at 11. The policy defines "business" as "a trade, profession, or occupation, including farming." Id. at 6. The general consensus, consistent with Oklahoma law, regarding the interpretation of "arising out of" is that the phrase should be "given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'—that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense." Fed. Ins. Co. v. Tri-State Ins. Co., 157 F.3d 800, 804 (10th Cir. 1998). And, the Oklahoma Supreme Court, in interpreting a similar business pursuits exclusion, explained that "the word 'pursuit,' as used in the exclusion, has only its ordinary understood sense, i.e. to go after, seek, chase, strive for or engage in an avocation, hobby or the like." Wiley v. Travelers Ins. Co., 534 P. 2d 1293, 1294 (Okla. 1974). The court also explained that the "the addition of a profit motive to an activity makes it a business pursuit." Id. at 1295.

The issue in this case is not the truth or falsity of the Pettigrew statements; that is for the fact-finder in the state court litigation. The only issue here is whether Pettigrew's statements arose out of Pettigrew's business pursuits. The Court first concludes that Pettigrew's service as an FTFC

---

[4]     The exclusion contains three exceptions, the first of which allows coverage when "the **loss** does not involve any land motor vehicle or watercraft and []**required underlying insurance** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page." Dkt. # 2-2, at 11. As previously discussed, the parties do not dispute that Pettigrew's underlying homeowners insurance policy does not apply and provide coverage for the loss at issue. Dkt. # 30, at 9; Dkt. # 35, at 21; Dkt. # 52, at 11. As such, this exception is inapplicable. The remaining two exceptions allow coverage for a "**loss** [that] involves a **private automobile** used for **business** pursuits" or a "**loss** [that] involves a watercraft used for **business** pursuits." The parties have made no claims that either a private automobile or a watercraft is in any way involved in the underlying action, rendering these exceptions similarly inapplicable.

11

board member constitutes a business pursuit.  Pettigrew is an insurance professional with over 30 years of experience, served on FTFC's board of directors for nearly a decade, owns shares in the company, received compensation for his service on the board, and has admitted that his investment in the company was at least partially profit-driven.  The Court concludes that Pettigrew's involvement with FTFC was a "business pursuit" because he engaged in this business venture, part of his "trade, profession, or occupation," with a profit motive.

The Court further concludes that Pettigrew's statements arose out of this business pursuit. Consistent with Oklahoma law, the Court gives "arising out of" a broad reading, under which the Court concludes that Pettigrew's statements arose out of his business pursuit, that is, his involvement in FTFC.  Pettigrew's statements were not, as defendants suggest, motivated solely by his personal desires.  See Dkt. # 30, at 5.  The content of Pettigrew's letters make clear that he was resigning, calling for an investigation, and detailing the reasons for his concerns that "originated from" or "grew out of" his service on FTFC's board; Pettigrew observed behaviors and actions as a board member that motivated him to make the allegedly defamatory statements.  With respect to defendants' argument that Pettigrew's statements could not have arisen from a business pursuit because his actions were detrimental to the business, this has no bearing on the broad definition courts afford the phrase "arising out of."  Defendants provide no authority for their argument that an action that could have a detrimental effect on a business pursuit cannot be said to arise out of the business pursuit.  Although a profit motive helps identify a business pursuit, an action that does not earn a profit or, indeed, hinders such a profit, may still arise out of a business pursuit.  See Wiley, 534 P. 2d at 1295.  Pettigrew was engaged in a business pursuit with Zahn--the operation and

12

governance of FTFC–and the actions he took and statements he made regarding information he received while a member of the board arose out of such business pursuit.

Although not decided under Oklahoma law, the Kansas Court of Appeals decided a case involving a business pursuits exclusion under Kansas law. Relevant here, the court noted that

> [a]n analysis . . . reveals that a reasonable man in the plaintiff's shoes would have understood the purposes of homeowners and excess insurance policies. The plaintiff had been involved in the insurance business for many years. He had held positions in virtually every phase of the business. He was aware that the insurance companies sell director's and officer's liability insurance policies for the activities that he engaged in here.

Krings v. Safeco Ins. Co. of America, 628 P.2d 1071, 1075 (Kan. App. 1981) (internal citations omitted). Like the plaintiff in Krings, Pettigrew has over 30 years of experience in the insurance industry, has held many positions in different phases of the business, and "would have understood the purposes of homeowners and excess insurance policies." See id. Pettigrew would have been aware of the limit of a personal liability policy as it concerned business ventures, but now attempts to evade that limit by arguing, joined by his business partner-turned-rival, that his actions stemming from his professional obligations as a board member of FTFC do not involve a "business pursuit." This argument simply defies logic and common sense.

The ultimate irony in this case is that two former business rivals have bilaterally joined forces in one final business pursuit--to argue that the claims in the underlying state court litigation do not arise out of Pettigrew's business pursuits. This final business pursuit meets the same end. The Court concludes that Pettigrew's statements "grew out of," "originated from," or were "done in connection with" his "trade, profession, or occupation." The policy exclusion for a loss arising from the insured's business pursuit excludes from coverage the underlying state court action.

**B.**

Although the Court concludes that the business pursuits exclusion applies and precludes coverage, the Court also considers whether the professional services exclusion provides another, independent basis upon which State Farm may deny Pettigrew coverage. State Farm asserts that the professional services exclusion precludes from coverage FTFC and Zahn's defamation action against Pettigrew in state court because Pettigrew's contribution of insurance knowledge, experience, and training constituted a professional service. Dkt. # 35, at 31,34-35. FTFC and Zahn assert that "[i]t is virtually axiomatic that a member of a board of directors who, without permission form the board or its officers, defames the corporation and its Chairman, CEO and President, is not rendering a professional service to the corporation." Dkt. # 30, at 10. Pettigrew asserts that his call for an investigation into Zahn's leadership of FTFC was not a professional service and that he was motivated by his "responsibility to be a good human being," rather than by business concerns. Dkt. # 52, at 19.

The professional services exclusion provides that a "**loss** arising out of any **insured** providing or failing to provide a professional service" is not covered under the umbrella policy. Dkt. # 2-2, at 11. The policy does not define professional services, and Oklahoma law provides minimal guidance. The Oklahoma Court of Civil Appeals has, however, considered the definition of professional services in the insurance context, and relied upon a Nebraska Supreme Court decision that defined professional services as follows:

> "The insurer's liability is thus limited to the performing or rendering of 'professional' acts or services. Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exact the use or application of special learning or attainments of some kin[d]. The term 'professional' in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as

14

> contrasted with that used in an occupation for production or sale of commodities. A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself."

Mut. Assur. Adm'rs, Inc. v. U.S. Risk Underwriters, Inc., 993 P.2d 795, 798 (Okla. Civ. App. 1999)

(internal citations omitted) (quoting Marx v. Hartford Acc. and Indem. Co., 157 N.W.2d 870, 871-72

(1968)).

Under this definition, Pettigrew's service as a member of the board of directors may fairly be characterized as a professional service. Pettigrew has nearly thirty years of experience in the insurance industry and his service as a board member, providing input and guidance in this field, arises out of his "vocation, calling, occupation, or employment involving specialized knowledge." Pettigrew's knowledge and experience in the insurance industry is "predominantly mental or intellectual," as is evidenced by Pettigrew's decades of experience in the insurance industry, including his work as both an insurance broker and an insurance consultant both of which required training and advanced knowledge in a technical field. This is precisely the work that requires specialized knowledge, distinct from work that is manual or physical in nature.

And, Pettigrew's statements arose out of this professional service. Defendants' argument that Pettigrew was not providing a professional service when he made the allegedly defamatory statements ignores or impermissibly narrows the phrase "arising out of" contained within the policy exclusion. As discussed above, courts afford "arising out of" a broad reading to include anything that "originates from," "grows out of," "flows from," or is "done in connection with" the professional services rendered. See Fed. Ins. Co., 157 F.3d at 804. Pettigrew provided a professional

15

service as an active member on the board and the loss at issue--Zahn and FTFC's defamation claims in the underlying state court lawsuit--"grew out of" or "arose from" this service. Pettigrew's concerns arose from his position and involvement with the board, and his statements "flowed from" or were made "in connection with" his service as a board member. As such, the professional services exclusion contained in the personal liability umbrella policy applies and precludes coverage for the state court action.

## C.

The Court also considers whether the policy exclusion for acts of a board member provides yet another basis for State Farm to deny Pettigrew coverage. State Farm asserts that the exclusion for losses arising from acts of a board member precludes coverage for the underlying state court action, asserting that the alleged defamation at the center of the underlying action arouse out of Pettigrew's acts as a board member of FTFC. Dkt. # 35, at 35. FTFC, Zahn, and Pettigrew assert that this policy exclusion does not apply because Pettigrew's actions were undertaken without any involvement of the FTFC board and Pettigrew admitted that he was not acting as a board member when he committed the acts giving rise to the underlying suit. Dkt. # 30, at 11; Dkt. # 52, at 20.

The exclusion for losses arising from acts of a board member excludes from coverage any "**loss** arising out of any **insured's** act or omission as a member of a corporation's board of directors. This exclusion does not apply if: a. the corporation is a not-for-profit corporation; and b. the **insured** is not an employee or officer of the corporation."[5] Dkt. # 2-2, at 11. As stated with respect to the business pursuits and professional services exclusion, "arising out of" is a broad term that requires

---

[5]     The parties advance no argument that the exception to this exclusion applies and the Court notes that the exception is inapplicable because, at the very least, FTFC is not a not-for-profit corporation. <u>See</u> Dkt. # 2-6, at 2.

some causal connection between Pettigrew's service as a board member and the loss at issue, but does not require proximate causation.  See Fed. Ins. Co., 157 F.3d at 804.

Defendants' argument that Pettigrew was not acting in his capacity as a board member when he made the allegedly defamatory statements simply lacks merit.  They assert that, because Pettigrew was acting outside of his duties as a board member and took actions detrimental to the corporation, "it would not be possible to claim that Mr. Pettigrew's acts arose out of his service on FTFC's Board of Directors." Dkt. # 30, at 11-12.  This argument fails because Pettigrew admits that he made an open records request, resigned, and made public statements pursuant to his fiduciary duty to other FTFC shareholders.  And defendants' interpretation of the policy language  would impermissibly narrow the policy language to apply only to situations in which the loss arose from an action that was beneficial to a corporation.  No such limitation exists in either the language of the policy or case law.  Pettigrew was acting pursuant to his duties as a board member when he made an open records request, resigned, and made public statements detailing his concerns with the company's leadership.  The defamation claims in the state court action arose from such action.

Defendants also assert that Pettigrew could not have been acting in his capacity as a board member when Pettigrew made the statements after he submitted his letter of resignation and Pettigrew would have been aware that FTFC's practice was for resignations to be effective immediately.  See Dkt. # 52, at 20.  This argument would require the Court to conclude that an loss may arise out of an action of a board member only when the board member remains an active member of the board.  The Court finds that this is too strict an interpretation and is inconsistent with the policy language.  The effective date of Pettigrew's resignation from FTFC is immaterial because, regardless of the effective date, Pettigrew's statements "grew out of" or were "done in connection

17

with" his actions as a member of FTFC's board of directors. See Fed. Ins. Co, 157 F.3d at 804. The Court also notes that Pettigrew signed at least one of his letters as "Wayne Pettigrew, Board Member," which clearly demonstrates Pettigrew's belief that he was acting in his capacity as a board member and further underscores the Court's conclusion that Pettigrew's statements arose out of his acts as an FTFC board member.

Pettigrew's actions resulted from his service as an FTFC board member. The undisputed facts demonstrate that a causal connection exists between his acts as a board member--his open records request and subsequent resignation--and the statements he made regarding his action. The Court concludes that Pettigrew's statements arose from his acts as a board member of FTFC. The exclusion for acts as a board member applies and excludes from coverage the underlying state court action.

## IV.

In closing, the Court notes that the defendants' arguments regarding each exclusion do not comport with the language of the policy, nor with common sense. The Court finds defendants' arguments unpersuasive, particularly in light of the insurance industry experience of Zahn and Pettigrew and the nature of FTFC's business. "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in light of common sense so as not to bring about an absurd result." Wiley, 534 P.2d at 1295. Adopting the defendants' argument would require the Court to abandon its common sense and would "bring about an absurd result," as Zahn and Pettigrew, insurance professionals themselves, are undoubtedly aware.

Each of the policy exclusions--the business pursuits exclusion, professional services exclusion, and acts as a board member exclusion--provides an independent basis for State Farm to deny Pettigrew coverage.  Because the policies State Farm issued to Pettigrew do not cover the loss, State Farm has no duty to either defend or indemnify Pettigrew in the underlying suit.  The Court concludes that State Farm is entitled to summary judgment because, as a matter of law, the personal umbrella liability policy does not provide coverage for FTFC and Zahn's defamation action against Pettigrew in state court.  State Farm's motion for summary judgment should thus be granted and both Pettigrew's and FTFC and Zahn's motions for summary judgment should thus be denied.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment and Supporting Brief of Plaintiff State Farm Fire and Casualty Company (Dkt. # 35) is **granted**; the Motion of First Trinity Financial Corporation and Gregg Zahn for Summary Judgment Against State Farm Fire & Casualty Company (Dkt. # 30) and Pettigrew's joinder (Dkt. #34) are **denied**; and Pettigrew's motion for summary judgment (Dkt. # 52) is **denied**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Motion in Limine of Plaintiff State Farm (Dkt. #39) is **moot**.

**DATED** this 5th day of April, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE